UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RON YOUNGBLOOD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1418** |
| **WARDEN KEITHE TURNER** | **SECTION: "M"(4)** |

### ORDER AND REASONS

Pro se petitioner Ron Youngblood ("Youngblood"), filed the above-captioned 28 U.S.C. § 2254 habeas petition regarding his attempted first-degree murder and felon in possession of a firearm conviction on September 29, 2017, in St. James Parish, Louisiana.[1] Also pending before the Court is Youngblood's **Motion to Stay Proceeding (ECF No. 3)** and **Motion for a Copy of Respondent's Answer and Opposition (ECF No. 21),** which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S. C. § 636(b) and the Court's Local Rules.[2]

### I.  Background

Youngblood is a state prisoner incarcerated at Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On August 11, 2015, Youngblood was indicted by a grand jury on two counts of attempted first degree murder and one count of felon in possession of a firearm.[3] Following a five day trial, on September 29, 2017, Youngblood was found guilty as to the attempted first degree murder of Deputy Michael Dufrense and felon in possession of a firearm charge, but was acquitted as to the attempted first degree murder charge of Sgt. Dustin Jenkins.[4] On January 22, 2018, the

---

[1] ECF No. 1 at 1.
[2] "A magistrate judge has authority to address a motion to stay a proceeding, when the order is not dispositive in that it merely suspends the proceeding and does not result in an absolute denial of ultimate relief." *Pierre v. Cain*, Civ. Action No. 15-5252, 2016 WL 1408581, at *1 n.1 (E.D. La. Apr. 11, 2016 (Roby, M.J.); *accord Kang v. Cain,* Civ. Action No. 15-2318, 2016 WL 866528, at *3 (E.D. La. Mar. 7, 2016) (Wilkinson, M.J.).
[3] ECF No. 13, at 44, Bill of Indictment, 8/11/15.
[4] *Id*. at 41-42, Minute Entry, 9/29/17.

trial court sentenced Youngblood to fifty years on the attempted first degree murder and twenty years on the felon in possession of a firearm to run consecutively and to be served at hard labor without the benefit or probation, parole or suspension of sentence.[5]

On direct appeal, appointed counsel for Youngblood alleged: (1) the trial court erred in denying the motion to reconsider sentence and (2) his sentence was constitutionally excessive.[6] Youngblood also filed a *pro se* brief raising twenty-one additional errors.[7] In their opinion, the Louisiana Fifth Circuit Court of Appeal noted that Youngblood's additional twenty-one errors related to the following six issues: (1) sufficiency of the evidence of both convictions; (2) prosecutorial misconduct; (3) police misconduct; (4) *Batson* violation; (5) an incomplete appellate record; and (6) the failure to charge the jury with a responsive verdict.[8] On May 19, 2022, the Louisiana Fifth Circuit Court of Appeal affirmed Youngblood's conviction and sentence.[9] However, the Louisiana Supreme Court granted Youngblood's writ application on June 3, 2020, in light of *Ramos v. Louisiana*, 590 U.S. 83 (2020), and instructed the lower appellate court to conduct a new error patent review on remand.[10]

In light of the Louisiana Supreme Court's ruling, on September 14, 2020, the trial court issued an order granting a new trial based on a prior motion for appeal filed by Youngblood.[11] On remand from the Louisiana Supreme Court, the Louisiana Fifth Circuit Court of Appeal affirmed Youngblood's conviction and sentence on the felon in possession of a firearm charge and vacated the conviction and sentence on the attempted first-degree murder charge in accordance with *Ramos*

---

[5] *Id*. at 43, Sentencing Minutes, 1/22/18.
[6] ECF No. 13-35 at 80, Appeal Brief, 18-KA-0445, 10/1/18.
[7] Id. at 92, Pro Se Supplemental Brief, 18-KA-0445, 11/7/18.
[8] *State v. Youngblood*, 274 So. 3d 716, 726 (La. App. 5th Cir. 2019); ECF No. 13-8 at 219.
[9] *Youngblood*, 274 So. 3d at 746; ECF No. 13-9 at 66.
[10] *State v. Youngblood*, 296 So. 3d 1022 (La. 2020); ECF No. 13-26 at 2.
[11] ECF No. 13-20 at 197, Judgment for New Trial, 9/14/20.

on December 9, 2020.[12] As a result, the Louisiana Fifth Circuit Court of appeal remanded the matter back to the trial court for a new trial as to the attempted first degree murder charge.[13] From that ruling, Youngblood sought review to the Louisiana Supreme Court which denied his writ application on May 25, 2021.[14] Youngblood did not file an appeal to the United States Supreme Court. Therefore, his state criminal judgment became final for AEDPA purposes one-hundred and fifty days[15] later, on October 22, 2021, when the time for him to file a petition for writ of certiorari expired. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); *Flanagan v. Johnson*, 154 F.3d 196, 200–01 (5th Cir. 1998)); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

Three-hundred and five days later, on August 23, 2022, Youngblood filed a counseled application for post-conviction relief.[16] In the application, Youngblood raised two claims. First, Youngblood claimed that as a result of the trial court granting him a new trial on all counts of his indictment in September of 2020, a decision which the State assented to on the record, his convictions were withdrawn and cannot be resurrected.[17] Second, notwithstanding claim one, Youngblood raised ineffective assistance of counsel as to the felon in possession of a firearm conviction for counsel's failure to object regarding a stipulation relating to prior conviction.[18] In

---

[12] *State v. Youngblood*, 308 So. 3d 417, 419 (La. App. 5th Cir. 2020); ECF No. 13-34 at 24.
[13] *Id*.
[14] *State v. Youngblood*, 316 So. 3d 2 (La. 2021); ECF No. 13-33 at 1.
[15] The period for filing a petition for writ of certiorari with the United States Supreme Court is typically 90 days. *See* Sup. Ct. R. 13(1). Youngblood used the 90-day period in his calculations. However, during the COVID-19 pandemic, the Supreme Court extended the deadline to file any petition for a writ of certiorari to 150 days from a lower court's order denying discretionary review. *See Rules of the Supreme Court of the United States - Miscellaneous Order Addressing the Extension of Filing Deadlines*, 334 F.R.D. 801 (March 19, 2020) ("[T]he deadline to file any petition for a writ of certiorari due on or after the date of this order is extended to 150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing. *See* Rules 13.1 and 13.3."). That extension was in effect from March 19, 2020, to July 19, 2021, when the deadline to file a petition for writ of certiorari was returned to 90 days. *See Miscellaneous Order Rescinding COVID-19 Related Orders*, 338 F.R.D. 801 (July 19, 2021).
[16] ECF No. 13-14 at 2, Application for Post-Conviction Relief, 8/23/22.
[17] *Id*. at 8.
[18] *Id*. at 9.

his application Youngblood also listed other unspecified claims related to ineffective assistance of counsel, *Brady*, and violations of due process.[19] In addition to his application for post-conviction relief, Youngblood filed a motion to reserve the right to supplement his post-conviction pleadings which the trial court granted on September 22, 2022.[20] While not provided in the state court record, the State's response indicates that on March 11, 2025, the trial court denied all of Youngblood's post-conviction claims.[21] Both parties state that Youngblood's related writ application to the Louisiana Fifth Circuit Court of Appeal based on the trial court's denial of his post-conviction claims is still pending.[22]

Youngblood filed his habeas petition on July 10, 2025, presumably in an attempt to interrupt the statute of limitations applicable to federal habeas relief, to the extent that it had not yet run.[23] He enumerates three claims for relief: (1) insufficiency of the evidence as to an agreed upon stipulation between parties and a misleading jury instruction; (2) a *Batson* violation; and (3) an incomplete record involving missing voir dire testimony prohibited him from perfecting an appeal of error.[24]

## II. Motion to Stay Proceeding (ECF No. 3)

At the time of filing his federal habeas petition Youngblood also filed a motion to stay the proceedings.[25] In his motion to stay, Youngblood states his application for post-conviction relief is still pending in state court.[26] Based on his calculations, he argues he will have thirteen hours and 30 minutes to timely file his federal habeas petition once he has fully exhausted his post-conviction

---

[19] *Id*. at 5.
[20] *Id*. at 41, Motion to Supplement Post-Conviction Pleadings, 8/23/22; *Id*. at 42, Order Granting, 9/22/22.
[21] ECF No. 19 at 14.
[22] ECF No. 19 at 15; ECF No. 3 at 3.
[23] ECF No. 1.
[24] *Id*. at 6-8.
[25] ECF No. 3.
[26] *Id*. at 3.

relief in state court. Given that, Youngblood states that once the Louisiana Supreme Court makes a final decision on his application his habeas clock will expire at midnight of the same day.[27] Due to the time constraint and that his application is still pending in state court, Youngblood requests the Court to stay his federal habeas proceedings until he is fully exhausted.[28]

The State acknowledges that Youngblood's application for post-conviction relief is pending in state court.[29] The State nonetheless opposes the requested stay.[30] The State argues Youngblood's unexhausted claims are procedurally barred from being raised in state court as they were not contemporaneously objected to at trial.[31] Further, the State argues that any claim is meritless if procedurally barred and therefore the request to stay the proceedings must be denied.[32]

### A. Motion for a Copy of Respondent's Answer and Opposition (ECF No. 21)

After the State's opposition was filed, Youngblood filed a motion requesting a copy of the State's answer to his petition as well as their opposition to his motion to stay.[33] Youngblood contends he did not receive a copy of either and learned the State submitted an answer and opposition via this Court's order denying an earlier motion by the State to file excess pages in their response.[34] As relief, Youngblood requests the Court issue an order directing the State or the Clerk of Court to send him a copy of the State's answer and opposition, the Clerk send him an electronic copy of the entire record, and requests fifteen additional days after the receipt of the requested materials to file his reply.[35]

---

[27] *Id*. at 4.
[28] *Id*. at 5.
[29] ECF No. 19 at 15.
[30] ECF No. 18 at 1.
[31] *Id*. at 3.
[32] *Id*.
[33] ECF No. 21 at 1.
[34] *Id*.
[35] *Id*. at 2.

### III. Law and Analysis

In *Rhines v. Weber*, 544 U.S. 269 (2005), the United States Supreme Court explained that, in limited circumstances, it is appropriate for a federal district court to stay habeas corpus proceedings. In *Rhines*, the petitioner had filed a federal habeas corpus application asserting a number of claims, however, the district court subsequently determined that some of those claims were unexhausted. In light of that determination, the petitioner moved the district court to hold his federal application in abeyance while he returned to the state courts to exhaust the unexhausted claims. The district court granted that motion, but the state appealed. The United States Eighth Circuit Court of Appeals then vacated the stay and remanded the case to the district court. However, the United States Supreme Court subsequently granted certiorari and vacated the Court of Appeals' judgment. In doing so, the Supreme Court noted:

> Fourteen years before Congress enacted AEDPA, we held in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims. We reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims. *Id*., at 518-519, 102 S.Ct. 1198. We noted that "[b]ecause 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity." *Id*., at 518, 102 S.Ct. 1198 (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). That doctrine "'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" 455 U.S., at 518, 102 S.Ct. 1198.
> Accordingly, we imposed a requirement of "total exhaustion" and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance. *Id*., at 522, 102 S.Ct. 1198. When we decided *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions. As a result, petitioners who returned to state court to exhaust their previously unexhausted claims could come back to federal court to present their perfected petitions with relative ease. See *Slack v. McDaniel*, 529 U.S. 473, 486,

> 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (dismissal without prejudice under *Lundy* "contemplated that the prisoner could return to federal court after the requisite exhaustion").
>
> The enactment of AEDPA in 1996 dramatically altered the landscape for federal habeas corpus petitions. AEDPA preserved *Lundy*'s total exhaustion requirement, see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State"), but it also imposed a 1-year statute of limitations on the filing of federal petitions, § 2244(d). Although the limitations period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review," § 2244(d)(2), the filing of a petition for habeas corpus in federal court does not toll the statute of limitations, *Duncan [v. Walker],* 533 U.S. [167,] 181-182, 121 S.Ct. 2120[, 150 L. Ed. 2d 251 (2001)].
>
> As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. For example, if the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim. The problem is not limited to petitioners who file close to the AEDPA deadline. Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case.
>
> We recognize the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike. In an attempt to solve the problem, some district courts have adopted a version of the "stay-and-abeyance" procedure employed by the District Court below. Under this procedure, rather than dismiss the mixed petition pursuant to *Lundy*, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Rhines*, 544 U.S. at 273-76.

The Supreme Court then held that the stay and abeyance procedure is permissible but cautioned that the procedure should be employed only in limited circumstances:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. *Duncan*, *supra*, at 180, 121 S.Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").
>
> Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. … Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. See, *e.g.*, *Zarvela [v. Artuz]*, 254 F.3d [374], 381 [(2d Cir. 2001)] ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. *See id.*, at 380-381.
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. See *Lundy*, 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions.

*Rhines*, 544 U.S. at 277-78.

In assessing Youngblood's request for a stay under the *Rhines* factors, the Court finds that a stay is appropriate in the instant matter for the following reasons.

First, the State argues that a stay is not merited due to Youngblood's claims being procedurally barred as they were not contemporaneously objected to at trial. However, both parties concede that Youngblood's application for post-conviction relief is still pending in the state courts. As such, there is no final determination yet from the state courts that Youngblood's claims are procedurally barred as his claims still unexhausted. Therefore, the State's argument that Youngblood's claims are plainly meritless due to a procedural bar is premature.

Second, *Rhines* requires that a court consider whether the petitioner had "good cause" for his failure to exhaust his claims. Here, Youngblood has shown good cause for the failure to exhaust. Based on his assertions, it appears that Youngblood filed a protective habeas petition in an attempt to avoid any potential problems with the federal statute of limitations. Regardless of whether Youngblood was afforded a ninety-day calculation to file his writ of certiorari with the United States Supreme Court or a one-hundred-and-fifty-day calculation, Youngblood has, at most, sixty days from when he exhausts his post-conviction relief to file timely federal habeas petition. As outlined above, the United States Supreme Court has expressly authorized the use of such protective petitions. *Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). When such a petition is filed, the district court generally should not dismiss the mixed petition but instead should "stay and abey the federal habeas proceedings until state remedies are exhausted." *Id*.

Third, *Rhines* requires that the Court consider whether the unexhausted claims are "plainly meritless." Youngblood's claims include assertions pertaining to ineffective assistance of counsel, sufficiency of the evidence, *Batson*, and incomplete records. While this Court does not express an opinion as to whether Youngblood will ultimately be entitled to relief, at least some of those claims are "potentially meritorious." Additionally, the provided state court record is void of all of

Youngblood's additional post-conviction filings aside from his initial application.[36] Given that, it is impossible at this time for the Court to conclude the full extent of the remaining pending claims and whether all unexhausted claims are plainly meritless.

That said, the Court recognizes that Youngblood faces substantial hurdles in the state courts. However, while those courts may eventually deny Youngblood's claims, this Court cannot be certain of that fact, and there is little harm in allowing him the opportunity to try to convince the courts that relief is warranted. "Fear of not prevailing is no excuse to ignore the state court's primary right of first decision." *Battaglia v. Stephens*, 824 F.3d 470, 476 (5th Cir. 2016).

Finally, there is there is no evidence that Youngblood has engaged in abusive litigation tactics or intentional delay.

In light of all of these considerations, the undersigned finds that is appropriate to grant Youngblood a stay to allow him to exhaust his remedies in the state courts. Given the Court's decision to grant the stay, Youngblood's motion requesting a copy of the State's opposition, answer to his petition, and extension to file his reply, will be dismissed without prejudice as moot. Upon Youngblood's exhaustion of his claims in the state courts and the stay being lifted in this matter, Youngblood may request necessary documents and extensions as needed at that time.

Accordingly,

**IT IS ORDERED** that Ron Youngblood's **Motion to Stay Proceeding (ECF No. 3) is GRANTED** and that the pending matter be stayed.

---

[36] The state court record is void of multiple post-conviction filings referenced by the State. This includes, but is not limited to, the State's answer to Youngblood's application for postconviction relief (filed 10/8/24), Youngblood's traverse to the State's answer (filed 10/30/24), a supplemental answer filed by the State (filed 1/8/25), the trial court's written denial of all of Youngblood's post-conviction claims (issued 3/11/25), Youngblood's notice of intent to seek a writ an order for extended return date (filed 4/7/25), and Youngblood's writ of seeking review of the trial court's denial of his application for post-conviction relief (filed 5/13/25). ECF No. 19 at 14-15.

**IT IS FURTHER ORDERED** that the Clerk of Court mark these actions **CLOSED** for statistical purposes.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction in this matter and that Youngblood is allowed to file a motion to reopen these proceedings within **thirty days** of exhausting his state court remedies.[37]

**IT IS FURTHER ORDERED** that Youngblood's **Motion for a Copy of Respondent's Answer and Opposition (ECF No. 21)**, considering the granting of the stay, is **DENIED WITHOUT PREJUDICE** as **MOOT**.

New Orleans, Louisiana, this 24th day of November 2025.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[37] Once this case is reopened Youngblood will likely be required to supplement his filings with a pleading which clearly identifies each claim he is asserting and the manner in which each claim was exhausted in the state courts.